UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRILYNN JEMISON,

        Plaintiff,                                 Civil Action No. 12-cv-10046

    v.                                       District Judge Lawrence P. Zatkoff
                                              Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Darrilynn Jemison brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff did not file a motion for summary judgment. Defendant filed a summary judgment motion, which is presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 4, 15.)

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's decision. Accordingly, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.[1]

---

[1] As Plaintiff elected not to file a motion for summary judgment, the Court is not obligated to review the record for error. It has nevertheless conducted a substantial evidence analysis and has

**II. REPORT**

    **A. Procedural History**

On April 20, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 109-117.) On the same date, Plaintiff also filed a Title XVI application for supplemental security income. (Tr.118-121.) In both applications, Plaintiff alleged that she became unable to work on March 13, 2008. (Tr. 109-121.) The Commissioner initially denied Plaintiff's applications on July 7, 2009. (Tr. 55, 56.) Plaintiff filed a request for a hearing, and on May 6, 2010, she appeared before Administrative Law Judge ("ALJ") Martha M. Gasparovich who considered the case *de novo*. (Tr. 18-54.) Dr. Robert A. Mosley, an impartial vocational expert, also appeared at the hearing. (Tr. 46-53.) Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. (Tr. 20-22.) In an October 14, 2010 decision, the ALJ found that Plaintiff was not disabled. (Tr. 6-17.) The ALJ's decision became the final decision of the Commissioner on November 14, 2011 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff filed this *pro se* suit on October 20, 2010.

    **B. Background**

Plaintiff was thirty-six years old at the time of her alleged onset date and thirty-eight years old at the time of the ALJ's decision. (Tr. 25-26.) Plaintiff has a high school education. (Tr. 25.)

---

determined that there are no obvious errors in the record. The decision to deny Plaintiff's claim for benefits is one that a reasonable person could have made based on this record, and under those circumstances, the Court recommends affirming the Commissioner's decision.

*1. Plaintiff's Testimony*

At the May 6, 2010 hearing before the ALJ, Plaintiff testified regarding her migraine headaches, sleep apnea and narcolepsy. (Tr. 24-45.) She also testified to her past work, including working as a cashier, shift supervisor, medical provider, and babysitter. (Tr. 25-31.) She testified to seeing a neurologist, nutritionist, physical therapist, and a pain management specialist. (Tr. 27.) Plaintiff testified that she had difficulty standing and sitting for long periods of time. (Tr. 35.) Plaintiff testified that she had difficultly with gripping items in her hands, and could not lift or carry over 10 pounds. (Tr. 37.) Plaintiff also testified that she had difficulty with pushing and pulling items. (*Id.*) Plaintiff testified that she frequently fell asleep and was chronically tired. (Tr. 37-38.) As a result of her inability to stay awake, Plaintiff testified that she was unable to sustain normal every-day activities and functions, for example, driving a car, cooking, or watching television for sustained periods of time. (Tr. 38-41.) Plaintiff testified that she was able to make her bed and attend to her own personal hygiene. (Tr. 39.) Plaintiff also testified that she experienced dizziness and nausea. (Tr. 42.)

*2. Medical Evidence*

On January 6, 2009, testing of Plaintiff's upper extremities for radiculopathy was negative. (Tr. 186-87.)

On January 29, 2009, Dr. James A. Rowley, M.D., performed a sleep study on Plaintiff. (Tr. 201.) The EEG demonstrated normally appearing background rhythms and transient waveforms. (*Id.*) The impression was diagnostic of mild obstructive sleep-disordered breathing and mild periodic limb movement disorder. (*Id.*) Recommendations included weight loss, alcohol avoidance, and continuous positive airway pressure (CPAP). (*Id.*)

3

On March 2, 2009, Dr. Fadi Saad indicated in his follow-up examination notes that Plaintiff has a mild case of sleep apnea, but that she is experiencing excessive daytime sleepiness. (Tr. 252.) On May 18, 2009, Dr. Saad's examination notes indicated that Plaintiff's sleepiness is "out of proportion with her degree of sleep apnea, which is mild." (Tr. 250.) Dr. Saad increased Plaintiff's CPAP pressure and suggested that he would conduct further testing if there was no clinical improvement. (*Id*.)

On July 7, 2009, Shakti Kaul, M.D. reviewed all of the evidence in Plaintiff's file and completed a physical residual functional capacity assessment. (Tr. 254-62.) Plaintiff was given the following exertional limitations: occasionally lifting 20 pounds, frequently lifting 10 pounds, standing and/or walking about 6 hours in an 8-hour work day, sitting about 6 hours in an 8-hour work day. (Tr. 255.) With respect to postural limitations, Plaintiff was limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 256.) Plaintiff was also never to climb ladders, ropes or scaffolds. (*Id*.) Plaintiff was also limited to avoiding even moderate exposure to hazards (machinery, heights, etc.). (Tr. 258.) Regarding the symptoms as alleged by Plaintiff, Dr. Kaul concluded: "we have very little showing severe impairments nor are the [Plaintiff's] statements of functional limitations credible nor supported." (Tr. 259.)

On January 27, 2010, Dr. Saad indicated that Plaintiff was diagnosed with a mild case of sleep apnea, but that after CPAP treatment, she "significantly improved." (Tr. 263.) Because of Plaintiff's remaining daytime sleepiness, Dr. Saad prescribed Provigil, which improved Plaintiff's daytime sleep symptoms, but he indicated that an increased dose was required. (*Id*.)

On March 11, 2010, an MRI of Plaintiff's cervical spine indicated only slightly abnormal curvature suggestive of mild muscle spasms. (Tr. 273.) There was no more than mild degenerative

changes present. (*Id*.) Additionally, there was evidence of herniated discs from C3-C6 that caused some neural foramina impingement, but no spinal stenosis. (*Id*.) Finally, there was no focal abnormality identified in the cervical cord. (*Id*.)

On March 18, 2010, Plaintiff saw Dr. Thomas Giancarlo, a neurologist, who indicated that Plaintiff's CPAP was working "quite well." (Tr. 268.) Dr. Giancarlo also indicated that Plaintiff had started taking a combination of Topamax and Midrin for her migraine headaches, which had worked "quite well." (Tr. 268.)

On March 31, 2010, Plaintiff received trigger point injections in her neck and upper back in an effort to relieve neck and back pain. (Tr. 281.) On April 7, 2010, Dr. Saad saw Plaintiff again and indicated that, after CPAP treatments, Plaintiff had "improved and is less sleepy." (Tr. 287.) Moreover, with the use of Provigil, Plaintiff reported that she "fe[lt] less sleepy." (*Id*.) Although Plaintiff indicated that she was only sleeping four hours per day, she reported that "she fe[lt] better." (*Id*.)

### 3. Vocational Expert's Testimony

The vocational expert (VE) testified that Plaintiff worked as a babysitter, which is classified by the dictionary as "medium work, semi-skilled, at lower level semi-skilled work, with an SVP [Specific Vocational Preparation][2] of level three." (Tr. 49.) The VE also testified that Plaintiff performed her past work as a babysitter at the light level. (*Id*.) The VE testified that Plaintiff's work as a medical assistant would be classified as light, but skilled work with an SVP of six. (*Id*.) The

---

[2] "Specific Vocational Preparation" is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *See* DOT, Appx. C.

5

VE testified that Plaintiff's work as a shift supervisor would be classified as light, skilled work with an SVP of five. (Tr. 50.) Further, the VE testified that Plaintiff performed it at the light level. (*Id*.) With respect to Plaintiff's work as a cashier, the VE testified that this work would be classified as light, semi-skilled, with an SVP of three. (*Id*.) The VE testified that Plaintiff performed this work at the light level. (*Id*.) Given Plaintiff's work history, the VE testified:

> Since she has had semi-skilled and skilled work in the past, she has acquired skills that can be transferrable. Those skills would be customer service, salesmanship, record keeping, some report writing, ordering and purchasing supplies, keeping records, and coordinating activities of others or directing those of others.

(Tr. 50.) The ALJ then asked the VE to assume the following hypothetical:

> I'd like you to assume an individual who is currently 38 years old and who possessed the same educational background and work experience as Ms. Jemison. Further assume that such an individual is unable to stand and walk more than six hours in an eight-hour day, but could sit up to six hours in an eight-hour day.
>
> Lifting is limited to 20 pounds occasionally and 10 pounds frequently. There could be no pushing or pulling of leve[r]s with the upper extremities. Kneeling, crouching, crawling, bending, climbing, squatting would be limited to occasional.
>
> Reaching would be limited to no more than two-thirds of the work day activity. This individual must avoid all hazards. Could such an individual perform the work activity you have described as Ms. Jemison's past work?

(Tr. 50.)

In response, the VE testified that the individual could perform all jobs that Plaintiff performed in the past per the Dictionary of Occupational titles, with the exception of babysitting. (Tr. 51.) With respect to babysitting, the VE testified that the hypothetical individual could perform that job as Plaintiff performed it the past. (*Id*.) The ALJ then asked the VE to consider the same hypothetical individual except that the individual would be limited to standing two hours of an eight-

6

hour day, and lifting would be limited to 10 pounds. (*Id*.) The ALJ then asked if that would affect the ability to perform the past work. (*Id*.) The VE testified that such a hypothetical person would not be able to perform any of Plaintiff's past work; however, there were other jobs that existed in the national economy that such an individual could perform, including: sedentary cashier two positions including: self-service station attendant cashier, self-parking lot attendant, cashier in dining room, and cashier in cafeteria. (Tr. 51-52.) Additionally, the VE testified that such an individual would be able to work as a surveillance system monitor, or in sedentary, unskilled clerk positions. (Tr. 52.)

The ALJ then asked the VE to consider the individual in the first hypothetical and additionally assume that there was a need to lie down throughout the day at unscheduled breaks for 10 to 20 minutes at a time, and this would occur four to eight times in an 8-hour work day. (*Id*.) The ALJ asked whether there would be any work that exists in the national economy such an individual could perform. (*Id*.) The VE responded, "no." (*Id*.)

The ALJ then asked the VE to consider the individual in the first hypothetical and additionally assume that such an individual would be off-task occasionally up to one-third of the day due to sleepiness or drowsiness. (*Id*.) The ALJ asked whether there would there be any jobs that exist in the national economy such an individual could perform. (*Id*.) The VE responded, "no." (*Id*.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines

"disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 13, 2008, the alleged onset date. (Tr. 11.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, obesity, sleep apnea and narcolepsy. (Tr. 12.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform "light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b) except cannot push or pull levers with either upper extremity and is limited to reaching no more than 2/3 of the workday; may only occasionally kneel, crouch, crawl, bend, climb or squat; and must avoid all hazards." (Tr. 12.) At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a babysitter, shift supervisor and cashier checker. The ALJ noted that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. 13.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights

because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without

interference by the courts" (internal quotation marks omitted)).

### F. Substantial Evidence Supports the Administrative Law Judge's Decision

Plaintiff fails to make specific arguments challenging the ALJ's decision. Defendant argues that "substantial evidence supports the ALJ's finding that Plaintiff was not disabled." (Dkt. 15, Def.'s Mot. Summ. J. at 8-13.)

The ALJ's written decision reveals that she properly applied the above-detailed five step analysis and supported her findings at each step with "relevant evidence [that] a reasonable mind might accept as adequate to support" her conclusions. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

Specifically, with regard to step three, the ALJ considered the correct medical listings and reasonably determined that Plaintiff's degenerative disc disease of the cervical spine, obesity, sleep apnea, and narcolepsy did not meet or medically equal the requirements of the listings. (Tr. 12.)

In addition, the ALJ carefully considered the entire record in determining Plaintiff's RFC. (Tr. 12-13.) In doing so, the ALJ gave "significant weight" to Disability Determination Services (DDS) physician Shakti Kaul, M.D. (Tr. 13.) Dr. Kaul reviewed the medical evidence and rendered an opinion in July 2009 that limited Plaintiff to a range of light exertion consistent with the ALJ's RFC. (Tr. 255-261.) The ALJ reasonably found significant that there were no contrary medical opinions and no medical profressionals who suggested that Plaintiff's condition was completely disabling. (Tr. 13.) Indeed, other medical opinions and records support the conclusion that Plaintiff's condition was in fact improving with treatment. For example, with CPAP treatment, Plaintiff's sleep apnea was "significantly improved." (Tr. 263.) Further, with prescribed medication for daytime sleep issues, Plaintiff reported being "improved and less sleepy." (Tr. 287.)

[delete line]

The ALJ also noted imaging studies and clinical testing. (Tr. 13, 292-93.) The ALJ considered a March 2009 MRI which indicated slightly abnormal curvature suggestive of muscle spasms, and evidence of only mild degenerative changes. (Tr. 13, 292.) The ALJ also indicated evidence of herniated discs from C3-C6 that caused some impingement on the neural foramen, but no spinal stenosis. (Tr. 13, 292-93.) The ALJ additionally considered testing for radiculopathy of the upper extremities from 2009 that was normal. (Tr. 13, 186-87.) The ALJ also considered Plaintiff's obesity, noting that her increased weight contributed to her apnea and narcolepsy symptoms. (Tr. 13.) In addition, the ALJ took into account Plaintiff's testimony and records regarding her impairments and how they affected her ability to function. (Tr. 13.)

Last, the ALJ properly relied on the testimony of a Vocational Expert in determining that Plaintiff was able to perform her past relevant work as she performed the jobs. (Tr. 13-14.) *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question . . . if the question accurately portrays [the] plaintiff's individual physical and mental impairments.") (internal citations omitted); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).

Applying this law to this case, the ALJ's RFC with regard to Plaintiff was supported by substantial evidence. Therefore, the ALJ could reasonably rely on the VE's response to her hypothetical question. Accordingly, the ALJ's ultimate finding of "not disabled" is supported by substantial evidence.

### G. Conclusion

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision. Accordingly, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Laurie J. Michelson  
                                                LAURIE J. MICHELSON  
                                                UNITED STATES MAGISTRATE JUDGE

Dated: November 26, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 26, 2012.

                                    s/Jane Johnson
                                    Deputy Clerk